**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | Case No. 2:20-cv-00340 |
| **Plaintiff,** | : | |
| | : | Chief Judge Algenon L. Marbley |
| v. | : | |
| | : | Magistrate Judge Kimberly A. Jolson |
| **GULFPORT ENERGY CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter is before the Court on Plaintiff, the United States of America's Motion for Entry of Consent Decree. (ECF No. 3). In the Motion, the United States asks this Court to approve the proposed Consent Decree and enter it as final judgement. (ECF No. 3 at 304). For the reasons set forth below, Plaintiff's Motion is **GRANTED.**

**I.  BACKGROUND**

Defendant, Gulfport Energy Corporation (hereinafter "Gulfport") owns multiple oil and natural gas production well pads. (ECF No. 1 at 1). The United States filed a civil action for injunctive relief and civil penalties against Gulfport, alleging that Gulfport violated—at multiple oil and gas production well pads that they own and operate in eastern Ohio (hereinafter "facilities")—statutory and regulatory requirements under the Clean Air Act (hereinafter "CAA") 42 U.S.C. §§ 7401-7617q; regulations publicized by the U.S. Environmental Protection Agency (hereinafter "EPA") establishing standards of performance for crude oil and natural gas production, transmission, and distribution facilities; as well as corresponding requirements in Gulfport's CAA operating permits for the Facilities. *Id.* The proposed Consent Decree would require Gulfport to implement measures to control air pollutant emissions from storage tanks at

1

the Facilities, undertake additional mitigation measures to help offset unauthorized past air pollutant emissions, and pay a total of $1,700,000 in civil penalties (plus interest) to the United States. *Id* at 2.

Pursuant to 28 C.F.R. § 50.7, the Environmental Law and Policy Center ("ELPC"), Concerned Barnesville Area Residents, and FracTacker Alliance (the "Objecting Parties") submitted comments in opposition to the Decree (hereinafter, "Comments"). The Comments argue that the Consent Decree should be not be approved because: (1) the Decree and enforcement process do not protect the public interest because they failed to incorporate community stakeholder input; and (2) the Decree lacks the transparency offered by online reporting necessary to ensure Gulfport's future compliance, promote accountability, and protect the public interest. (ECF No. 3-1 at 308). The United States argues that these objections are not valid and that the Consent Decree meets the standards for judicial approval because it is fair, reasonable, and consistent with the public interest and the purposes of the Clean Air Act. (ECF No. 4 at 327).

## II. STANDARD OF REVIEW

When the EPA determines that a response action is needed at a particular facility, it must publish a proposed remedial action plan and provide opportunity for comment. 42 U.S.C. § 9617. When implementing a remedial action plan, the Environmental Protection Agency may apply to the district court for an injunction to compel a professionally responsible party (hereinafter "PRP") to clean up or abate an actual or threatened release of hazardous substances from a facility. 42 U.S.C. § 9606. Pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the United States is permitted to enter into covenants not to sue with settling defendants if such covenants are in the public interest. 42 U.S.C. § 9622(f)(1). When the

EPA enters into an agreement with a PRP pursuant to 42 U.S.C. § 9606, the agreement shall be entered as a consent decree upon its approval from the District Court. 42 U.S.C. § 9622(d)(1)(A).

Since consent decrees are a product of careful, bilateral compromise, both parties naturally sacrifice potential victory in litigation in exchange for eliminating the cost and risk that naturally accompany litigation. *United States v. Armour & Co.,* 402 U.S. 673, 681-82 (1971).When a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency—here, the EPA—which has substantial expertise in the environmental field, the government-negotiated settlement is favored strongly. *See United States v. Akzo Coatings of Am.,* 949 F.2d 1409, 1436 (6th Cir. 1991). A court shall uphold a decision for a response action unless an objecting party can demonstrate, on the administrative record, that the decision was arbitrary, capricious, or otherwise not in accordance with the law. 42 U.S.C. § 9613(j). The CAA follows this standard. 42 U.S.C. § 7607.

In the Sixth Circuit, courts are required to approve the settlement if the government shows that it is both procedurally and substantively fair, reasonable, and consistent with the public interest and the goals of the applicable law. *See United States v. Akzo Coatings of Am.,* 949 F.2d 1409, 1424 (6th Cir. 1991). *United States v. Lexington-Fayette Urban Cty. Gov't,* 591 F.3d 484, 489 (6th Cir. 2010); *United States v. George A. Whiting Paper Co.,* 644 F.3d 368, 372 (7th Cir. 2011); *United States v. BP Exploration & Oil Co.,* 167 F. Supp. 2d 1045, 1049 (N.D. Ind. 2009).

### III.  ANALYSIS

The Comments submitted by the Objecting Parties argue that the Consent Decree should not be approved due to two alleged inadequacies: (1) the Decree and enforcement process does not protect the public interest because it failed to incorporate community stakeholder input; and, (2) the Decree lacks the transparency offered by online reporting necessary to ensure Gulfport's future

compliance, promote accountability, and protect the public interest. (ECF No. 3-1 at 308). This Court will first analyze Plaintiffs' objections to the Consent Decree and then analyze the Consent Decree's consistency with the three factors courts in the Sixth Circuit use to assess the validity of these types of decrees.

### A. Objections to Procedural and Substantive Fairness

The Objecting Parties argue that the Consent Decree is inadequate because the process for drafting it failed adequately to incorporate community stakeholder input and to involve the affected communities in the enforcement proceedings. (ECF No. 3-1 at 2). The Government argues that it provided adequate opportunity for community and stakeholder input by following the Department of Justice's long-standing policy soliciting written public comments before seeking court approval of a settlement of an action pursuant to 28 C.F.R. § 50.7.

Objections to procedural fairness relate to "the negotiations process, i.e., whether it was open and at arms-length" while "[s]ubstantive fairness concerns concepts of corrective justice and accountability." *BP Exploration*, 167 F. Supp. 2d at 1051. To determine procedural fairness, a court should analyze the negotiation process for the existence of openness and bargaining balance. *See In re Eagle-Picher Indus.,* No. C-1-96-821, 1997 U.S. Dist. LEXIS15436, at *21-22, (S.D. Ohio July 14, 1997) ("In ascertaining procedural fairness, the reviewing court should consider whether the negotiating process was candid and open. The Court should also consider the relative strength of the parties' bargaining positions."); *United States v. 3m Co.,* No. 3:14-cv-32, 2014 WL 1872914, at *8, (S.D. Ohio May 8, 2014) ("Procedural fairness requires a conclusion that negotiators bargained in good faith. To measure procedural fairness, a court should ordinarily look at the negotiation process and attempt to gauge its candor, openness, and bargaining balance.").

To be fair, negotiations must also be negotiated in good faith. *BP Exploration,* 167 F. Supp. 2d at 1052.

Here, the parties represent that the Consent Decree was negotiated in good faith, and the Objecting Parties provide no evidence contradicting these representations. (ECF No. 2-1 at 4). The EPA also asserts that there was procedural fairness because the negotiation process was an arm's length process occurring over a year and a half. (ECF No. 4 at 6). The fairness element is satisfied here since nothing in the record indicates that the process was unfair and since the negotiations leading to the proposed Consent Decree were conducted at arm's length over a year and a half. *See United States v. Lexington-Fayette Urban Cty. Gov't,* 591 F.3d 484, 489 (6th Cir. 2010) (good faith is satisfied when there is nothing in the record that indicates otherwise); *United States v. Akzo Coatings of Am.,* 949 F.2d 1409, 1435 (6th Cir. 1991) (six months of negotiations that led to a consent decree was sufficient time for arms-length negotiations to justify procedural fairness). Moreover, both parties were represented by attorneys which indicates the existence of bargaining balance. *See United States v. 3m Co.,* No. 3:14-cv-32, 2014 WL 1872914, at *8, (S.D. Ohio May 8, 2014) (determining that bilateral attorney representation indicates procedural fairness).

Additionally, the United States specifically indicated in the Consent Decree that it reserved the right to "to withdraw or withhold its consent" if any of the comments received during the thirty-day notice period indicated that the decree is inappropriate, improper, or inadequate. (ECF No. 2 at 52). The United States' willingness to incorporate stakeholder input taking issue with the substance of the consent decree is suggestive of procedural fairness. *See United States v. BP Prods. North America,* Civil No. 2:12-CV-207, 2012 WL 5411713, at *7 (N.D. Ind. Nov. 6, 2012) (determining that proposed consent decree was fair where it was noticed in the Federal Register

5

for a 30-day period during which public comments were solicited); *United States v. International Harvester Co.,* No. C-3-85-365, 1993 WL 1377510, at *29, (S.D. Ohio, Mar. 31, 1993) (same).

The Objecting Parties also take issue with the fact that the Consent Decree did not mandate that Gulfport publish all compliance reports in an online website, arguing that this evidences a lack of transparency and is thus substantively unfair. (ECF No. 3-1 at 311). As the Government indicates, however, the Consent Decree contains a limited reporting mechanism that will generate only about five or six reports, the EPA and the State of Ohio maintain a website that includes more comprehensive compliance reports that would be submitted by Gulfport anyway, and any additional information sought by interested parties can be obtained by filing a Freedom of Information Act request. Courts routinely approve consent decrees containing similar reporting schemes. *See United States v. United States Steel Corp.,* No. 2:12-CV-304, 2017 WL 1190953 (N.D. Ind. Mar. 30, 2018) (approving consent decree containing similar reporting scheme which protected confidential business information and did not require defendant to separately publish compliance reports); *United States v. Patriot Coal Corp.,* No. 2:09-0099, 2009 U.S. Dist. LEXIS 38216 (S.D. W.Va. Apr. 30, 2019) (same); *United States v. Mobil Oil Guam, Inc.,* No. 10-00006, 2010 U.S. Dist. LEXIS 75799 (D. Guam July 27, 2010) (same).

Accordingly, the reporting requirements in the Consent Decree are substantively fair since the reporting requirements are similar to previously approved consent decrees and the parties' objections do not suggest that the decision to enter into the Consent Decree was arbitrary, capricious, or otherwise contrary to law. *See United States v. Akzo Coatings of Am.,* 949 F.2d 1409, 1425 (6th Cir. 1991) (noting that statute requires, "in this highly technical area, decisions concerning the selection of remedies [to] be left to EPA, and those decisions should be accepted

or rejected—not modified—by the district court under an arbitrary and capricious standard.") (citing 42 U.S.C. § 9613(j)).

### B. Other Fairness Considerations

Courts determining whether a consent decree is fair consider a number of additional factors including the strength of a plaintiff's case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in the litigation if the settlement is not approved. *United States v. Akzo Coatings of Am.,* 949 F.2d 1409, 1435 (6th Cir. 1991).

As for the civil penalties, unfairness must be obvious from the record. *Lexington-Fayette Urban Cty. Gov't,* 591 F.3d at 489. Here, nothing on the record indicates that the civil penalty is unfair and penalties for lesser amounts in similar cases have been approved. For example, in a consent decree based on the Clear Water Act, the Sixth Circuit determined that a fine of $425,000 was fair, despite objections from a party that this fine was too high. *United States v. Lexington-Fayette Urban Cty. Gov't,* 591 F.3d 484, 489 (6th Cir. 2010). Although the fine was considered "high," the Court determined that the penalty was fair because litigation could subject the defendant to civil penalties "in the tens of millions of dollars" due to the Clear Water Act's maximum daily penalty of $25,000. *Id. at* 489. As for the CAA, violations that occur between January 13, 2009, and November 2, 2015 are assessed penalties of up to $37,500 per day. (ECF No. 1 at 13). Violations occurring after November 2, 2015, may include penalties of up to $99,681 per day if the assessment is made on or after February 6, 2019. *Id*. $99,681 is almost four times the value of daily penalties under the Clean Water Act ($25,000). Here, the proposed consent decree would require Gulfport to pay a total of $1,700,000–plus interest–in civil penalties. (ECF No. 2 at 2). This number is exactly four times the value of the $425,000 fine in *Lexington*. In other words, Gulfport's fine follows the same formula as *Lexington,* and Gulfport has not admitted to

7

any violations that would warrant a higher penalty. (EFC No. 2-1 at 4); *see Lexington-Fayette Urban Cty. Gov't,* 591 F.3d at 489.

Additionally, the Consent Decree has set forth stipulated penalties for violations of the Consent Decree to enforce accountability and future compliance. (ECF No. 2-1 at 32). The inclusion of stipulated penalties in Consent Decrees is indicative of fairness. *See United States v. BP Prods. North America,* Civil No. 2:12-CV-207, 2012 WL 5411713, at *8 (N.D. Ind. Nov. 6, 2012) (noting that agreement was fair in part due to inclusion of a stringent set of stipulated penalties that would hold defendant accountable for performance under the Consent Decree). Accordingly, this Consent Decree meets the standard for procedural and substantive fairness.

### C. Reasonableness and Consistency

The primary purpose of the CAA is to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). Therefore, a decree is reasonable and consistent with the law if it is likely to cleanse the environment effectively. *United States v. Lexington-Fayette Urban Cty. Gov't,* 591 F.3d 484, 489 (6th Cir. 2010).

In *Lexington,* the Sixth Circuit determined that the proposed consent decree should have been approved, as it was in line with the Government's stated goal of "cleansing the environment" by bringing Lexington into compliance with the Clean Water Act and by deterring future violations of the Act by Lexington and others. 591 F.3d at 489. Here, the United States argues that the decree will satisfy the purpose of the CAA because it would reduce air pollutant emissions from storage tanks at the Facilities, reverse damage from previous violations, and hold Gulfport accountable for past non-compliance. (ECF No. 4 at 328). Additionally, the United States contends that the Decree's emission control requirements, environmental mitigation projects, and civil penalties for

noncompliance will deter future violations which will achieve the objective of cleansing the environment. (ECF No. 4 at 331). As in *Lexington,* there is no apparent reason to discredit these assertions, particularly given the strong "presumption in favor of voluntary settlement." *Id.* at 490. Accordingly, the Decree is reasonable and consistent with the purposes of the CAA.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Entry of Consent Decree the Proposed Consent Decree is **GRANTED**. This case is hereby DISMISSED.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: September 1, 2020**

9